RADIO CORPORATION OF AMERICA,
Petitioner,

v.

Hon. Michael L. IGOE, United States District Judge for the Northern District of Illinois, Eastern Division, Respondent.

GENERAL ELECTRIC COMPANY,
Petitioner,

v.

Hon. Michael L. IGOE, United States District Judge for the Northern District of Illinois, Eastern Division, Respondent.

Nos. 11220, 11221.

United States Court of Appeals
Seventh Circuit.

Nov. 15, 1954.

As Amended Feb. 23, 1955.

Carl S. Lloyd, Chicago, Ill., John T. Cahill, Whitney North Seymour, Albert C. Bickford, New York City, Hamilton K. Beebe, Chicago, Ill., for petitioners.

Thomas C. McConnell, Joseph S. Wright, W. Donald McSweeney, Chicago, Ill., for respondent.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Pursuant to leave of this court, Radio Corporation of America, sometimes herein referred to as "RCA," and General Electric Company, sometimes herein referred to as "General Electric," filed their respective petitions for a writ of mandamus or other appropriate writ directed to Judge Igoe of the District Court. Respondent answered and asked that the petitions be denied.

This court ordered the above entitled causes consolidated for hearing.

The petitions pray for a writ of mandamus or other appropriate writ, directing Judge Igoe to vacate an order entered on June 15, 1954, and directing that case

No. 48C1818, in that court, Radio Corporation of America v. Rauland Corp., D.C., 16 F.R.D. 160, sometimes hereinafter referred to as the Chicago action, be stayed until the determination of a case known as Civil Action No. 1247 in the United States District Court for the District of Delaware, sometimes hereinafter referred to as the Delaware action, and for general relief. Zenith Radio Corporation v. Radio Corporation of America, 16 F. R.D. 348.

While the parties hereto are not in accord as to the proper inferences to be drawn from the facts set forth in the petitions, nor as to the correctness of the conclusions therein stated, certain relevant facts appearing in the petitions and answers in this court are undisputed and are now set forth.

The Chicago action was instituted on December 7, 1948, by RCA as a patent infringement suit against The Rauland Corporation, sometimes herein referred to as "Rauland," and Zenith Radio Corporation, sometimes herein referred to as "Zenith." Zenith and Rauland filed an answer and counterclaims which were amended and supplemented, and filed an amended counterclaim on April 9, 1953. The latter asks for a declaratory judgment of invalidity and noninfringement of patent rights. It alleges that Rauland manufactures and sells cathode-ray tubes, which are used in receivers made and sold by Zenith, Rauland being a wholly owned subsidiary of Zenith. It also alleges that, contrary to the assertions of plaintiff, the use and sale of said tubes does not constitute infringement of United States letters patent, because said patents are invalid, void and unenforceable for the reason that they are a part of a pool of patents and patent rights which were acquired by plaintiff and have been "asserted" by RCA both alone and with the aid of other companies, as part of a conspiracy to dominate and monopolize the entire electronics field.

The counterclaim prays for judgment accordingly, and specifically for a judgment that the patents which defendants thus acquired and used in violation of the anti-trust laws are not infringed and are invalid. It prays for an injunction, costs of action, and attorney's fees, as well as general relief.

On April 29, 1953, plaintiff moved the court to stay proceedings in the Chicago case until the issues common to the Delaware action and the Chicago litigation had been disposed of in Delaware.

The Delaware action was commenced when Zenith filed in the Delaware court on December 13, 1946, on February 6, 1948, and August 8, 1949, three complaints for declaratory judgment, which were there consolidated as Civil Action No. 1247, naming RCA, General Electric, Western Electric Co., Inc., American Telephone and Telegraph Co., Bell Telephone Laboratories, Inc., and Westinghouse Electric Corporation, as defendants. In these cases Zenith charges that certain patents being asserted against Zenith are invalid, not infringed and unenforceable, praying that a declaratory judgment to that effect be entered and that RCA be restrained from asserting any rights based upon said patents against Zenith or any customer or user of its radio apparatus or any supplier of parts therefor. Counterclaims were filed by RCA, General Electric and Western Electric Co., asking damages for infringement of a large number of patents. Replying to the counterclaims, Zenith asserts that the latter patents are unenforceable by reason of misuse in violation of the anti-trust laws.

On July 8, 1949, Judge Leahy of the District Court in Delaware entered an order (1) denying Zenith's motion to stay the Chicago action, (2) denying Rauland's motion to intervene in the Delaware action, and (3) granting RCA's motion to stay Rauland's independent action against RCA[1] in the Delaware court.

1. The record before us does not reveal the subject matter of this action, except that it is denominated Civil Action No. 1181.

On June 26, 1953, plaintiff restated its motion in the Chicago action, as follows: to stay the trial of the Chicago case until after all matters in the Delaware case had been disposed of. Defendants having evinced an intention to take depositions, respondent indicated that such depositions would be stayed until further order. No order was actually entered. No depositions have been taken.

On February 11, 1954, Zenith and Rauland filed an amendment to their counterclaim, in which they make detailed allegations as to damages said to have been sustained by them as a result of the conspiracy charged against the counter-defendants, and they ask for summons to issue against various cross-defendants named in the said amendment, and that damages be assessed, including treble damages, for violation of the anti-trust laws[2], as well as costs of suit and attorneys' fees as provided by statute.

On June 15, 1954, Judge Igoe sustained a motion by Zenith and Rauland to permit them forthwith to proceed with discovery and to take depositions under the Federal Rules of Civil Procedure.

This is the order now under attack in this proceeding.

■ An important distinction exists between the power of a court to stay proceedings pending before it and the propriety of using that power, which calls for a weighing of competing interests and the maintenance of an even balance. Landis v. North American Co., 299 U.S. 248, at page 254, 57 S.Ct. 163, 81 L.Ed. 153. The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. The power to order that proceedings be stayed to abide proceedings in another court is not limited to situations where the parties to the two causes are the same and the issues identical. On the other hand, a determination of the propriety of using such a power in a

given situation requires that the suppliant for such a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. Considerations, such as these, however, are counsels of moderation rather than limitations upon power. Benefit and hardship will be set off, one against the other, and upon an ascertainment of the balance the court will exercise a discretionary judgment in the exercise of its power. Landis v. North American Co., supra.

Respondent, in deciding whether he should exercise his power as district judge to stay proceedings pending before him, had the right and the duty of considering several relevant factors, to some of which we have already referred: (1) the Chicago action was commenced by RCA, who is now petitioning this court for a writ commanding respondent to stay proceedings in that case; (2) RCA made Rauland a party defendant to the Chicago action; (3) Rauland is not a party to the Delaware action; (4) while petitioners filed counterclaims in the Delaware action asking for judgment against Zenith, they did not join Rauland; (5) they resisted, with success, Rauland's attempt to intervene in the Delaware action; (6) while the Delaware action has been pending since 1946 and it was represented to respondent in 1953 that the trial thereof was imminent, a year later it was made to appear to respondent that the only issues to be tried in the Delaware action in the foreseeable future were issues involving the validity of patents and that the witnesses whose depositions Zenith and Rauland wished to take are men of advanced age whose knowledge of the location and content of documentary evi-

2. Zenith's total damages are alleged to be in excess of $13,356,549 and Rauland's total damages are alleged to be in excess of $2,700,000.

dence is indispensable to the preparation and trial of the amended counterclaim; (7) that the claim for treble damages asserted by Zenith and Rauland, in the counterclaim, as amended, has not been asserted by either of them in the Delaware action (Rauland not even being a party thereto); (8) Judge Leahy ordered that in the Delaware action a separate trial of the issues relating to validity and infringement of patents specified in the counterclaims of RCA, General Electric and Western Electric Co. is to be had prior to the trial of any other issues in the case; (9) that no date for said separate trial has been set and when set will involve at least a year of court days; (10) rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that any party may take depositions after the commencement of an action without leave of court; (11) when Rauland moved to intervene in the Delaware action petitioners objected and the motion was denied; (12) RCA's motion to stay an independent civil action brought by Rauland in the Delaware court against RCA was granted; (13) Zenith's motion to stay the Chicago action was denied by Judge Leahy.

▮ The record shows affirmatively that respondent considered many of the circumstances above enumerated. There is no showing that he did not consider all of them. It appears that he exercised his judgment and even if he arrived at an erroneous conclusion, which we do not now decide, he was not guilty of an abuse of discretion. As we have seen, he undoubtedly had the power to stay or refuse to stay the proceedings before him. The order having resulted from an exercise of his discretion, where he undoubtedly had the power, we can find no authority for reviewing his action by interlocutory appeal in the guise of a writ of mandamus or other extraordinary remedy. As was said in Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, at page 382, 74 S.Ct. 145, at page 148, where a writ of mandamus was sought to vacate a severance and transfer order entered by a District Court:

"Its decision against petitioner, even if erroneous—which we do not pass upon—involved no abuse of judicial power, Roche v. Evaporated Milk Ass'n, supra, [319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185] and is reviewable upon appeal after final judgment. If we applied the reasoning advanced by the petitioner, then every interlocutory order which is wrong might be reviewed under the All Writs Act. The office of a writ of mandamus would be enlarged to actually control the decison of the trial court rather than used in its traditional function of confining a court to its prescribed jurisdiction. In strictly circumscribing piecemeal appeal, Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous. The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power' of the sort held to justify the writ in De Beers Consolidated Mines v. United States, 1945, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566. This is not such a case."

The court then pointed out that the extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial. The court said, 346 U.S. at page 383, 74 S.Ct. at page 148:

"We may assume that, as petitioner contends, the order of transfer defeats the objective of trying related issues in a single action and will give rise to a myriad of legal and practical problems as well as inconvenience to both courts; but Congress must have contemplated those conditions in providing that only final judgments are reviewable."

For the reasons hereinbefore set forth, we hold that this court should not grant

a writ of mandamus or any other extraordinary writ directing the District Court to vacate the order of June 15, 1954, or directing it to stay proceedings. Therefore the petitions are denied.

FINNEGAN, Circuit Judge.

I concur in the result with these additional views:

This attempted invocation of an extraordinary remedy, as a vehicle to obtain our review of a non-appealable order, brings a recurrent problem into sharp relief. When a petition or motion for leave to file a petition for writ of mandamus becomes perfunctory or ritualistic, then petitioners obtain delays in proceedings at the trial below, burden the trial judge, and hinder opposing parties.

From my experience, I think that the bulk of these requests seeking leave to file petitions for extraordinary relief ought to be disposed of at the threshold. Readily granting leave, and going forward to full oral arguments adds not one whit to the appealability of orders usually complained of. Where such petitions are well grounded, an extraordinary remedy proceeding is the tool of an advocate, but in an increasingly predominating number of cases it has become simply a handy delaying or harassing tactic. Indeed, in those rare instances where judicial discretion is actually abused, it ought to be apparent from, and manifested by the face of the initial petition. Cumulative briefing and oral arguments add nothing to conduct and dispositions already cast into permanent record made below.

Under its Rules 30 and 31, 346 U.S. 951, 979, 28 U.S.C., the Supreme Court has described considerations governing issuance of, and procedure on applications for, extraordinary writs. Significant is its requirement that petitions for the issuance of such writs " * * * shall be prefaced by a motion for leave to file such petition * * *."

As long as Congress restricts review by courts of appeals to appealable orders, we must ward off attempts to circumvent its mandate. At the same time, we need to alertly guard all litigants against arbitrary and capricious use of judicial power. But oppressive tactics are as damaging to the orderly administration of justice in a free society, whether emanating from judge, plaintiff or defendant.

The order which stimulated petitioners in this case did not terminate the litigation, pending below, on its merits. From the welter of exhibits, filed in this court, it is clear that these petitioners earlier resisted, as defendants, Zenith's attempt to obtain a writ of mandamus for review of Judge Leahy's order. Defending, in the Third Circuit Court of Appeals against use of an extraordinary writ for review of that Judge's order, petitioners here, there contended it was " * * * not appealable or otherwise reviewable * * *," citing in support, Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185.[1] In my opinion the petitioners' argument, as defendants in the Third Circuit, was standing refutation of that which they just sought before us. The same statutory channel for appealing from a final judgment in the Third Circuit is also open in this Circuit after a final appealable order is entered in the pending lawsuit below.

That writs of mandamus may not be used as substitutes for unauthorized review is well settled. Implicit in our original jurisdiction, over this extraordinary remedy, is power to grant or reject petitions, or motions, for leave to file petitions for such writs. Without this prefatory step, parties can shift trial judges into the status of litigants, Ex parte Fahey, 1947, 332 U.S. 258, 259, 67 S.Ct. 1558, 91 L.Ed. 2041, any time a ruling is thought to be uncongenial. Permitting parties to force district judges to retain counsel or ask an attorney, in the case before them for representation, merely

---

1. Brief for Defendants-Appellees In Support of Motion To Docket and Dismiss, dated March 30, 1953; Supplemental Exhibits, 53, 71.

by filing a petition for mandamus (if a matter of right in this court) would go far toward diluting trial courts' judicial powers. District judges must not be fettered by this threat—rule sympathetically, else plead forthwith as a respondent. Litigation would soon be disrupted if we tolerated continuous, though abortive, attempts at piecemeal review. Each petition for *leave to file* a petition for this drastic remedy needs to be subjected to a careful sifting and testing process prior to causing the respondent judge to plead and defend. Certainly our power, to grant relief in appropriate cases, will not atrophy from disuse.