UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT 

No. 94-1766

CONGRESS CREDIT CORPORATION,

Plaintiff, Appellant,

v.

AJC INTERNATIONAL, INC., ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge] 



Before

Campbell, Senior Circuit Judge, 

Boyle* and Fust ,** District Judges. 



Ronald L. Rosenbaum, with whom Woods, Rosenbaum, Luckeroth & 
Perez Gonzalez was on brief for appellant. 
Brian K. Tester, with whom Richard A. Lee Law Office was on brief 
for appellees.


December 15, 1994


 

*Of the District of Rhode Island, sitting by designation.

**Of the District of Puerto Rico, sitting by designation.

CAMPBELL, Senior Circuit Judge. Congress Credit 

Corporation ("Congress Credit") appeals from the district

court's dismissal without prejudice of its diversity action

to collect certain proceeds in the hands of the appellees,

AJC International, Inc. ("AJC") and Fronex Commodities, Inc.

(Fronex") under a perfected factor's lien. The lien was

allegedly granted to Congress Credit by United Western of

Puerto Rico, Inc. ("United Western"), which later filed for

bankruptcy. The district court has dismissed the lien action

without prejudice, apparently believing that Congress Credit

should not presently proceed with its lien action due to the

pendency of several adversary proceedings brought in the

bankruptcy court by the trustee of United Western to recover

the same sums as preferences from these same defendants.

This court initially affirmed, but upon considering Congress

Credit's petition for rehearing, and after giving the matter

further thought, has vacated its opinion and judgment of

affirmance. We now hold that the district court was without

authority to dismiss Congress Credit's diversity action to

enforce its lien, and we vacate and remand for further

proceedings in the district court.

FACTUAL AND PROCEDURAL BACKGROUND FACTUAL AND PROCEDURAL BACKGROUND

Congress Credit is a commercial finance company.

It financed the accounts receivable and inventory of United

Western and claims to hold a recorded Factor's Lien and

-2-

Assignment of Accounts Receivable given by United Western

pursuant to the Puerto Rico Factors Lien and Assignment of

Accounts Receivable Acts.1 On March 2, 1990, United Western

filed a petition in bankruptcy under Chapter 11 of the

Bankruptcy Code, which was converted to Chapter 7 on

September 7, 1990.

Appellees were suppliers of United Western, who

allegedly, within the ninety days prior to the bankruptcy

filing, received bulk transfers of inventory from United

Western in payment of its outstanding indebtedness to them 

$376,610.79 in the case of AJC and $81,178.60 in the case of

Fronex.2 On May 11, 1990, United Western commenced

adversary proceedings in the bankruptcy court against the

appellees, alleging that the inventory sales constituted

preferential transfers. After the conversion to Chapter 7

the trustee was substituted for the debtor as plaintiff.

Congress Credit commenced this action in the district court

under diversity jurisdiction to recover essentially the same

 

1. P.R. Laws Ann. tit. 10, 551-60, 581-88 (1976). The
status and validity of this lien is not presently before us,
although it plays a central role in the controversy.

2. Two other suppliers of United Western also allegedly
received bulk transfers within the ninety day preference
period, in the amounts of $180,504.84 in the case of Agro
International ("Agro") (originally a named defendant in this
suit) and $23,000.00 in the case of Top Flight, Inc. ("Top
Flight"). Congress Credit represents that both of these
entities have been liquidated while this litigation has been
pending.

-3-

assets, or their proceeds, on June 1, 1990, alleging that the

merchandise thus transferred had been subject to its factor's

lien.

On June 7, 1990 (some six days after filing its

lien action in the district court) Congress Credit filed an

adversary proceeding in the bankruptcy court, asserting a

claim to any recovery the estate might obtain in the

preference actions. The trustee did not contest this

proceeding; accordingly, judgment was entered on February 11,

1992 in favor of Congress Credit, securing Congress Credit's

right to any such recovery.

The appellees having successfully obtained a stay

of the lien action on August 31, 1990, pending resolution of

the adversary proceedings in the bankruptcy court, Congress

Credit next moved the district court to lift that stay on

August 27, 1992. The appellees opposed that motion and moved

to dismiss on September 28, 1992. The district court denied

the motion to vacate the stay and granted the motion to

dismiss in an opinion and order dated April 16, 1993.

Congress Credit's unsuccessful motion for reconsideration was

denied in a second opinion and order dated June 8, 1994,

which reiterated the grounds stated in the first opinion.

Congress Credit then appealed.

Congress Credit represents that there are no funds

in United Western's estate and that the bankrupt's business

-4-

has long since been liquidated.3 The record also shows that

the bankruptcy judge has rejected a proposed agreement for

Congress Credit to finance the trustee's preference actions

and has ordered the trustee to show cause why the preference

actions should not be dismissed, as none of the proceeds

would benefit the estate (i.e. they would presumably all go

to Congress Credit under the bankruptcy court's order of

February 11, 1992).

The district court, nonetheless, reasoned that

Congress Credit's interests were fully protected by and could

await the results of the trustee's preference actions. The

court seemed to base the dismissal of the lien action on its

understanding that it was merely duplicative of the pending

preference actions:

The trustee's adversary proceeding and
this case involve the same transactions,
property and parties. The only
difference between the cases lies in the
legal bases for challenging the validity
of the transfers. A judgment in the
civil action would most certainly have an
effect on the debtor's estate. . . .
[M]aintenance of two proceedings

 

3. Not having the record in the bankruptcy case before us,
we cannot know for certain that this is correct. If it is,
and if, as may be the case, infra, the preference action 
cannot benefit the estate, there may be no point in having
the trustee seek to recover property all of which must be
turned over to Congress Credit, with the inflation of legal
fees that this might entail. On the other hand, there may be
legitimate reasons justifying continuance of the preference
actions. Sorting out and making the best provision for these
realities is something we leave to the district court on
remand.

-5-

adjudicating the same issues consumes
scarce judicial resources.

ANALYSIS ANALYSIS

Shortly after hearing this appeal, we summarily

affirmed the district court's judgment of dismissal as, at

first blush, it seemed sensible to permit matters to be

pursued and, if possible, concluded in the bankruptcy court.

Like the district court, we were unhappy at the prospect of

the two cases the preference actions and the lien action

wasting scarce resources by proceeding on separate tracks

in different courts, with the risk of multiple judgments. We

are now persuaded, however, that the district court's

proposed solution to this dilemma was legally insupportable.

The correct, as well as most efficient solution, is for both

proceedings to be consolidated for disposition in the

district court, which is the only court with clear

jurisdiction over both.

While the lien action and the preference actions

apparently involve the identical property, they are not one

and the same action, permitting dismissal of one as surplus

to the other. They do not involve the same parties nor the

same causes of action. The law suit from which this appeal

is taken the lien action is a diversity action to

enforce a lien created under Puerto Rico law. P.R. Laws Ann.

tit. 10, 551-60, 581-88 (1976). Congress Credit must

prove the existence and validity of the lien, and, in

-6-

addition, that the lien attached to the inventory transferred

to the appellees and followed to any claimed proceeds now in

their hands. The trustee, on the other hand, must show,

inter alia, that the inventory was property of the estate 

when transferred to appellees so that its transfer to them

was a preference. 11 U.S.C. 547(b) (1988) ("the trustee

may avoid any transfer of an interest of the debtor in 

property") (emphasis added); see generally 4 Collier on 

Bankruptcy, 547.01 (Lawrence P. King, ed. 1994) (discussing 

elements of a preference claim). This may require

consideration of the extent to which Congress Credit's

asserted lien removed the inventory from the debtor's

property and made it instead the property of Congress Credit

prior to the filing of United Western's bankruptcy

petition.4 Thus, the legal operation and validity of the

lien is an issue of some importance to both cases. However,

the plaintiffs and the legal theories for recovery in each

case are different.

The district court apparently viewed the two cases

as based on identical, parallel theories, giving the earlier

 

4. The operation of the lien is a question of Puerto Rico
law. See 4 Collier on Bankruptcy, 541.02[1] (Lawrence P. 
King, ed. 1994) ("Section 541 provides that the commencement
of a case creates an estate consisting, most importantly, of
all legal or equitable interests of the debtor in property at
the time of the commencement of the case. Under this
provision it will still be necessary to look to nonbankruptcy
law, usually to state law, to determine whether the debtor
has any legal or equitable interest in any particular item.")

-7-

preference cases a right to proceed exclusive of the

subsequent lien action. This analysis overlooked the major

differences between the two causes of action. A district

court may certainly dismiss an action which is merely

"duplicative" of another action pending in another federal

court. See Colorado River Water Conservation Dist. v. United 

States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 

(1976); Small v. Wageman, 291 F.2d 734, 735 (1st Cir. 1961); 

17A Charles Alan Wright et al., Federal Practice and

Procedure 4247 nn. 7-8 and accompanying text (2nd ed.

1988). But for an action to be "duplicative" of another, so

as to warrant its dismissal for that reason alone, the one

must be materially on all fours with the other. The present

lien action is not at all in that category. The plaintiff in

the lien action is different from that in the preference

actions, and the theory of recovery is altogether different.

See, e.g., Thermal Dynamics Corp. v. Union Carbide Corp., 214 

F. Supp. 773, 774 (S.D.N.Y. 1963) (in order to properly

enjoin suit in another court, the issues "must have such an

identity that a determination in one action leaves little or

nothing to be determined in the other"); Radio Corp. of 

America v. Rauland Corp., 16 F.R.D. 160, 163 (N.D. Ill. 1954) 

(federal court should not stay proceedings in its own

jurisdiction unless it appears that parties and issues are

the same), mandamus denied, 217 F.2d 218 (7th Cir. 1954), 

-8-

cert. denied, 348 U.S. 973, 75 S.Ct. 533, 99 L.Ed. 758 

(1955), mandamus denied, 348 U.S. 968, 75 S.Ct. 543, 99 L.Ed. 

754 (1955).

We think it clear, therefore, that there is no

justification for dismissing the present lien action on the

basis of a supposed identity between it and the preference

actions. Nor can we see any bankruptcy-related theory

allowing the district court to force Congress Credit to

depend upon the preference proceedings in the bankruptcy

court for the collection of its lien. We are advised that

the automatic stay as to Congress Credit has long since been

vacated. See 11 U.S.C. 362(a) (1988) (staying actions 

against the debtor, property of the debtor, or property of

the estate). Direct enforcement of Congress Credit's lien

must be accomplished by a state law action brought in the

Puerto Rico courts or a federal court sitting in diversity.

It is doubtful whether a bankruptcy court has jurisdiction at

all over such a lien action, which is clearly not a core

bankruptcy matter, see 28 U.S.C. 157(b) (1988). 

Conceivably, in proper circumstances, a bankruptcy court

might handle a lien enforcement action as a non-core but

"related" proceeding under the eye of the district court,

which would have final say over its disposition. 28 U.S.C. 

157(c) (1988) (bankruptcy court may hear a non-core

proceeding, but final disposition of such must be by the

-9-

district court). Most probably, although we do not rule on

the question, the lien action is not even a "related"

proceeding. The lien holder here claims, and has been

awarded by order of the bankruptcy court, the right to all

recovery in the preference actions. This suggests that, by

now, the result in the lien proceeding can have no impact

whatever upon the bankruptcy estate. See, e.g., In re North 

Star Contracting Corp., 146 B.R. 514, 519 (Bankr. S.D.N.Y. 

1992) (action is "related to" a bankruptcy if outcome could

alter the debtor's rights, liabilities, options, or freedom

of action, or in any way impacts upon the handling and

administration of the bankruptcy estate); In re Chambers, 125 

B.R. 788, 793 (Bankr. W.D. Mo. 1991) (matter not "related to"

Title 11 where neither amount of property available for

distribution, not the allocation of property among creditors,

is affected by the dispute). If the lien enforcement action

is not a "related" proceeding, the bankruptcy court would

lack any jurisdiction whatever over it. In any event, it is

difficult to justify ousting Congress Credit, even

temporarily, from the district court which clearly has

diversity jurisdiction over its lien action leaving its

rights under the lien to be secured in the more round about

preference proceeding, requiring proof of additional

elements, in a court probably lacking any jurisdiction to

enforce the lien claim directly.

-10-

In these circumstances, we think it was erroneous

to defer to the trustee's and the bankruptcy court's lead in

the preference proceedings proceedings which, at best,

seem poorly tailored to Congress Credit's present needs, and

which in any case seem to have lost steam. To be sure, it

makes no sense for the two actions to proceed along separate

tracks, inviting a defense strategy of divide and conquer.

But there is a better solution to this problem, namely, to

consolidate both proceedings in the one court, here the

district court, where jurisdiction over both actions plainly

exists. This will enable attention to be directed where it

should have been directed all along to the merits or

demerits of the claims against the appellees, without the

distraction of conceivable double or conflicting recoveries

in different courts.

We, therefore, vacate and remand to the district

court with instructions that it provide appropriate notice to

the trustee in bankruptcy, directing him to show cause in the

district court why the preference claims should not be

brought up to the district court from the bankruptcy court

and either abandoned or dismissed or else continued in

consolidation with the lien claim.5 The district court can

 

5. The bankruptcy court has already instituted inquiry into
whether the preference claims should be continued now that it
is clear that the sole beneficiary will be Congress Credit.
The district court may, but need not, allow that inquiry to
be resolved by the bankruptcy judge if it thinks this is the

-11-

either dismiss the preference claims if it determines that

they lack viability (assuming the bankruptcy court has not

done so, see n.5) or allow the trustee to pursue them in a 

consolidated proceeding in the district court together with

the lien diversity action.

The power of the district court to consolidate the

preference actions now pending in the bankruptcy court with

the instant diversity lien action rests on its power to

withdraw a case from the bankruptcy court "for cause shown."

28 U.S.C. 157(d) (1988). Courts have done this where

necessary in analogous instances. See, e.g., In re Sevko, 

Inc., 143 B.R. 114, 117 (N.D. Ill. 1992) (considerations of 

judicial economy adequate to meet "cause shown" requirement);

Enviro-Scope Corp. v. Westinghouse Elec. Corp. (In re Enviro- 

Scope Corp.), 57 B.R. 1005, 1008-09 (E.D. Pa. 1985) (same). 

We direct use of 157(d) not because of any fault on the

part of the bankruptcy court, but because bringing the

preference claims into the district court will allow all

facets of these controversies affecting the same property and

 

most efficient way to proceed. Alternatively, the district
court may take charge of and resolve that inquiry itself.
Given the nearly four years of wheelspinning, we direct the
district court to do whatever is necessary to speedily
resolve, or have resolved, the status of the preference
proceedings so that appellant's lien claim, either alone or
in tandem, can move ahead and be decided without further
delay.

-12-

the same defendants to be disposed of by one tribunal having

undoubted jurisdiction and authority.

We emphasize that the question of whether there is

any reason to continue the preference claims should be

speedily resolved at the outset. To pursue them at the

expense of the estate and, potentially, of the appellant's

recovery, may be inadvisable and a waste of money. On the

other hand, we do not want to prejudge the matter. If the

preference claims still serve a proper purpose and should be

pursued, they should be pursued in the district court in a

consolidated proceeding together with the lien claim. We are

confident that the district court, having both matters before

it, will give expedited attention to ending the existing

gridlock. Congress Credit is entitled to have the merits of

its claims determined without further delay.

The district court's judgment of April 19, 1993,

and its opinion and order of June 8, 1994, are vacated, and

this case is remanded to the district court for proceedings

consistent with this opinion.6

 

6. We treat the district court's opinion and order of June
8, 1994 as an appealable final judgment. See Bankers Trust 
Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 
(1978).

-13-