ROCHE, U. S. DISTRICT JUDGE, ET AL. *v.* EVAPORATED MILK ASSOCIATION ET AL.

No. 584. Argued April 6, 1943.—Decided May 3, 1943.

*Mr. Paul A. Freund* argued the cause, and *Solicitor General Fahy, Assistant Attorney General Tom C. Clark,* and *Messrs. Charles H. Weston, Kenneth L. Kimble,* and *Robert L. Stern* were on the brief, for petitioners.

*Mr. Francis R. Kirkham,* with whom *Messrs. Marshall P. Madison, Herbert W. Clark, Arthur B. Dunne, U. S. Webb, Maurice E. Harrison, Willis I. Morrison, Joseph A. Murphy,* and *Nat Brown* were on the brief, for respondents.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question for decision is whether the Circuit Court of Appeals below rightly issued its writ of mandamus to the district court to correct that court's alleged error in striking respondent's pleas in abatement to a criminal indictment.

An indictment returned in June, 1941, by the grand jury sitting in the district court for Southern California, charged respondents and others with conspiracy to fix the price of evaporated milk sold in interstate commerce in violation of §§ 1 and 3 of the Sherman Act, 15 U. S. C. §§ 1, 3. The indictment recited that the grand jury which returned it had been impaneled at the November, 1940, term of court; that it had "begun but not finished during said November 1940 Term of said Court, an investigation of the matters charged in this indictment"; and that by order of the court the grand jury had continued to sit

during the March, 1941, term "for the sole purpose of finishing investigations begun but not completed during said November Term."

In September, 1941, respondents filed pleas in abatement, asking that the indictment be quashed for want of jurisdiction of the court, on averments that the minutes of the grand jury for its meeting of February 28, 1941, disclosed that no investigation of any matter mentioned in the indictment had been "begun" by the grand jury within the meaning of § 284 of the Judicial Code, 28 U. S. C. § 421,[1] during the November, 1940, term of court, which expired March 2, 1941.[2]

The Government filed replications denying generally all the allegations of the pleas, and the issues thus raised

---

[1] That section provides in part:

"A district judge may, upon request of the district attorney or of the grand jury or on his own motion, by order authorize any grand jury to continue to sit during the term succeeding the term at which such request is made, solely to finish investigations begun but not finished by such grand jury, but no grand jury shall be permitted to sit in all during more than eighteen months . . ."

[2] The grand jury minutes for February 28, 1941, stated:

"Special meeting of the Federal Grand Jury held this day, Foreman Mrs. Hattie H. Sloss, presiding. Minutes of previous meeting read and approved as corrected. (See below.) Special Assistant to the Attorney General Charles C. Pearce and Special Assistant Charles S. Burdell continued the presentation of the peach industry for violation of the Sherman Anti-Trust Act. There being no further business the meeting adjourned."

Then below the following appears:

"The following industries were also named by witnesses and investigation begun. Plywood; Wines and Grape Industry; Wholesale and Retail Groceries; Canned and Evaporated Milk; Canned Fruit and Vegetables; Sardine Industry; all Food Industries were suggested for investigation, and investigation of Sugar Beet Industry was begun. Other industries named as subject to investigation are Salmon Industry, Canned Pineapple, Walnuts and Almonds, Tomatoes, Dried fruits, and a certain Labor Union with headquarters or located in Oakland, Asparagus and Cherries."

were set for trial before a jury. Thereafter leave was granted to the Government to withdraw its replications and to file demurrers to the pleas, and motions to strike them because insufficient in law, because they failed to state specific facts with sufficient certainty, and because they alleged facts which could not be within the pleaders' knowledge. After argument the district court sustained the demurrers and granted the motions. Respondents thereupon instituted the present proceeding by their petition to the Circuit Court of Appeals for the Ninth Circuit, praying that a writ of mandamus issue directing petitioners—the Honorable Michael J. Roche, district judge, and the district court—to reinstate the pleas in abatement and the Government's replications, and to set the issues raised by the pleas and replications for jury trial.

On the petition for the writ and the Government's return, the court of appeals ordered the writ to issue. Upon rehearing before the full court sitting *en banc* the court held that it had jurisdiction to issue the writ; that the district court had erred in striking the pleas in abatement; that the case was an appropriate one for intervention by mandamus; and that the writ should issue directing petitioners to reinstate the pleas in abatement and the replications, and to try the issues of fact thus raised. 130 F. 2d 843. The court of appeals seems to have regarded the district court's order striking the pleas in abatement as in effect a refusal to act upon the pleas, *id.* 845. We granted certiorari, 318 U. S. 747, on a petition which set up that the circuit court of appeals erred in directing that mandamus issue, and in holding that the district court erred in striking the pleas in abatement.

Petitioners concede that the circuit courts of appeals, like this Court, may, as provided by § 262 of the Judicial Code, 28 U. S. C. § 377, "issue all writs not specifically provided for by statute, which may be necessary for the

exercise of their respective jurisdictions, and agreeable to the usages and principles of law." *McClellan* v. *Carland,* 217 U. S. 268, 279; *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 272–3. They argue that as the district court's order striking the pleas in abatement was an exercise of its jurisdiction, its action is reviewable only on appeal and not by mandamus, and that since by Congressional enactment and policy appellate review of the district court's order may be had only on review of a final judgment of conviction, that legislation and policy are not to be circumvented by resort to mandamus.

We are of opinion that in the circumstances of this case these are valid objections to the exercise by the circuit court of appeals of its discretionary power to issue the writ.

As the jurisdiction of the circuit court of appeals is exclusively appellate, its authority to issue writs of mandamus is restricted by statute to those cases in which the writ is in aid of that jurisdiction. Its authority is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected. Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal. *Ex parte Bradstreet,* 7 Pet. 634; *Insurance Company* v. *Comstock,* 16 Wall. 258, 270; *McClellan* v. *Carland, supra,* 280; *Ex parte United States,* 287 U. S. 241, 246; cf. *Ex parte Siebold,* 100 U. S. 371, 374–5; *Ex parte Peru,* 318 U. S. 578, and cases cited.

The common law writs, like equitable remedies, may be granted or withheld in the sound discretion of the court. *Ex parte Peru, supra,* p. 584, and cases cited; *Whitney* v. *Dick,* 202 U. S. 132, 136, 140. Hence the question presented on this record is not whether the court below had

power to grant the writ but whether in the light of all the circumstances the case was an appropriate one for the exercise of that power. In determining what is appropriate we look to those principles which should guide judicial discretion in the use of an extraordinary remedy rather than to formal rules rigorously controlling judicial action. Considerations of importance to our answer here are that the trial court, in striking the pleas in abatement, acted within its jurisdiction as a district court; that no action or omission on its part has thwarted or tends to thwart appellate review of the ruling; and that while a function of mandamus in aid of appellate jurisdiction is to remove obstacles to appeal, it may not appropriately be used merely as a substitute for the appeal procedure prescribed by the statute.

The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so. *Ex parte Peru, supra,* p. 584, and cases cited; *Ex parte Newman,* 14 Wall. 152, 165–6, 169; *Ex parte Sawyer,* 21 Wall. 235, 238; *Interstate Commerce Comm'n* v. *United States ex rel. Campbell,* 289 U. S. 385, 394. Even in such cases appellate courts are reluctant to interfere with the decision of a lower court on jurisdictional questions which it was competent to decide and which are reviewable in the regular course of appeal. *Ex parte Harding,* 219 U. S. 363, 369; cf. *Stoll* v. *Gottlieb,* 305 U. S. 165; *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66.

But the present case involves no question of the jurisdiction of the district court. Its jurisdiction of the persons of the defendants, and of the subject matter charged by the indictment, is not questioned. This is not a case like *Ex parte Bain,* 121 U. S. 1, where the petitioner had been convicted on an indictment which, because it had

been amended after it was returned by the grand jury, was thought to be "no indictment of a grand jury." Here the indictment, was returned by the requisite number of duly qualified grand jurors, acting under order of the court continuing the grand jury in session. The objection that the subject matter of the indictment was not one which the jury had been or could be continued to hear was at most an irregularity which, if the proper subject of a plea in abatement, did not affect the jurisdiction of the court. Cf. *Breese* v. *United States*, 226 U. S. 1, 10–11; *Kaizo* v. *Henry*, 211 U. S. 146, 149; *Matter of Moran*, 203 U. S. 96, 104; *Harlan* v. *McGourin*, 218 U. S. 442, 451; *In re Ward*, 173 U. S. 452, 454.

Nor does this case involve a refusal by the district court to adjudicate issues properly presented to it, such as justified the issuance of the writ in *McClellan* v. *Carland*, *supra*. Compare *Ex parte United States*, *supra*. In sustaining the Government's demurrers to the pleas and its motions to strike, the district court did not, as the court below seemed to think, refuse to act on the pleas. Instead, it held that they were insufficient in law to abate the criminal prosecution. In thus ruling on questions of law decisive of the issue presented by the pleas and replications the district court acted within its jurisdiction as a federal court to decide issues properly brought before it. Its decision, even if erroneous—a question on which we do not pass—involved no abuse of judicial power, and any error which it may have committed is reviewable by the circuit court of appeals upon appeal appropriately taken from a final judgment, and by this Court by writ of certiorari.[3]

Ordinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been

---

[3] In the court below, petitioners urged that the decision of the district court in striking the pleas in abatement could not have been reviewed by the circuit court of appeals after final judgment by rea-

28

prescribed or to review an appealable decision of record. *Ex parte Morgan,* 114 U. S. 174, 175; *In re Atlantic City R.*

son of R. S. § 1011, which has been carried over in substance into 28 U. S. C. § 879. R. S. § 1011 provides:

"There shall be no reversal in the Supreme Court or in a circuit court upon a writ of error, for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court, or for any error in fact."

This provision was taken from § 22 of the Judiciary Act of 1789, 1 Stat. 73, 84, a section which was in terms applicable only to civil cases. Neither the Judiciary Act of 1789 nor the Revised Statutes made any provision for review of federal criminal cases on writ of error, although R. S. §§ 651 and 697 provided for certification to the Supreme Court of questions arising in criminal cases. Review on writ of error of criminal cases in the federal courts was first established by the Act of Mar. 3, 1879, 20 Stat. 354, authorizing review of district court decisions by circuit courts. By § 6 of the Act of February 6, 1889, 25 Stat. 655, 656, the Supreme Court was given appellate review of capital cases on writ of error, and §§ 5 and 6 of the Judiciary Act of 1891, 26 Stat. 826, 827–8, abolished the appellate powers of the circuit courts, enlarged the appellate criminal jurisdiction of the Supreme Court, and authorized review of criminal cases tried in the circuit and district courts, by the circuit courts of appeals on writ of error.

None of these acts contains any provision making applicable to criminal cases reviewed on writ of error the limitations which § 22 of the Judiciary Act of 1789 imposed on such review of civil cases. Although R. S. § 1011 is phrased in terms of general applicability, it was held in *Buck Stove Co.* v. *Vickers,* 226 U. S. 205, 213, that the rearrangement and rewording in the Revised Statutes of § 22 of the Judiciary Act of 1789 was not intended to change the meaning of that section, and that since § 22 had applied only to cases from federal courts, R. S. § 1011 did not prevent consideration of a ruling on a plea in abatement in a case on writ of error from a state court. We think that similar reasoning applies here to preclude the section's application to criminal cases, to which in its original form it did not apply.

In a large number of criminal cases, this Court and the circuit courts of appeals have reviewed on the merits decisions overruling or refusing to entertain pleas in abatement, although without reference to R. S § 1011. *Agnew* v. *United States,* 165 U. S. 36, 43–5; *Bram* v. *United*

*Co.,* 164 U. S. 633, 635; *Ex parte Roe,* 234 U. S. 70, 73; *Ex parte Park Square Automobile Station,* 244 U. S. 412, 414; *Ex parte Riddle,* 255 U. S. 450, 451. Circuit courts of appeals, with exceptions not now material, have juris-

*States,* 168 U. S. 532, 566–8; *Crowley* v. *United States,* 194 U. S. 461, 468–74; *Holt* v. *United States,* 218 U. S. 245, 247–8; *Hyde* v. *United States,* 225 U. S. 347, 372–4; e. g. *Dunn* v. *United States,* 238 F. 508; *Breese* v. *United States,* 143 F. 250, 252–3; *Mulloney* v. *United States,* 79 F. 2d 566, 572–80; *Hillman* v. *United States,* 192 F. 264, 269–70; *Lowdon* v. *United States,* 149 F. 673. A few circuit courts of appeals have said that the section prevented appellate consideration of a decision overruling a plea in abatement to an indictment, although also holding that the pleas were properly overruled. *Mounday* v. *United States,* 225 F. 965, 967 (C. C. A. 8); *Luxenberg* v. *United States,* 45 F. 2d 497, 498 (C. C. A. 4); *Biemer* v. *United States,* 54 F. 2d 1045 (C. C. A. 7); *United States* v. *Molasky,* 118 F. 2d 128, 133 (C. C. A. 7). And the section has on occasion been cited as precluding appellate review of the weight and sufficiency of the evidence in criminal cases—a proposition which hardly needs its support. *Miles* v. *United States,* 103 U. S. 304, 313; e. g. *Jaramillo* v. *United States,* 76 F. 2d 700; *Rosenberg* v. *United States,* 15 F. 2d 179, 181; *Jezewski* v. *United States,* 13 F. 2d 599, 602; *Stoecko* v. *United States,* 1 F. 2d 612, 613; *Kinser* v. *United States,* 231 F. 856, 861. The fact that the great majority of appellate decisions, including all in this Court, have considered pleas in abatement on the merits, establishes a practice, beginning soon after the first authorization of criminal appellate review, which is persuasive of the statutory intent.

Our conclusion that R. S. § 1011 is inapplicable to criminal cases is reinforced by a consideration of the kinds of objections which in a criminal case may properly be the subjects of a plea in abatement. Although frequently described as a dilatory plea which should be strictly construed, *United States* v. *Greene,* 113 F. 683, 688–9, such a plea is an appropriate means of raising objections to an indictment which may involve serious and prejudicial infringements of procedural rights, such as an objection to the qualifications of grand jurors, *Crowley* v. *United States, supra* (compare the Act of April 30, 1934, 48 Stat. 648, 649, 18 U. S. C. 554a); to the method of selection of the grand jury, *Agnew* v. *United States, supra* (cf. *Glasser* v. *United States,* 315 U. S. 60, 85); or to its composition, see *Carter* v. *Texas,* 177 U. S. 442, 447.

diction to review only final decisions of district courts, 28 U. S. C. § 225 (a).[4] Respondents stress the inconvenience of requiring them to undergo a trial in advance of an appellate determination of the challenge now made to the validity of the indictment. We may assume, as they allege, that that trial may be of several months' duration and may be correspondingly costly and inconvenient. But that inconvenience is one which we must take it Congress contemplated in providing that only final judgments should be reviewable. Where the appeal statutes establish the conditions of appellate review, an appellate court cannot rightly exercise its discretion to issue a writ whose only effect would be to avoid those conditions and thwart the Congressional policy against piecemeal appeals in criminal cases. *Cobbledick* v. *United States,* 309 U. S. 323. As was pointed out by Chief Justice Marshall, to grant the writ in such a case would be a "plain evasion" of the Congressional enactment that only final judgments be brought up for appellate review. "The effect therefore of this mode of interposition would be to retard decisions upon questions which were not final in the court below, so that the same cause might come before this Court many times before there could be a final judgment." *Bank of Columbia* v. *Sweeney,* 1 Pet. 567, 569. See also *Life & Fire Insurance Co.* v. *Adams,* 9 Pet. 573, 602; *Ex parte Hoard,* 105 U. S. 578, 579–80; *American Construction Co.* v. *Jacksonville, T. & K. W. Ry. Co.,* 148 U. S. 372, 379.

For that reason this Court has consistently refused to sustain the use of mandamus as a means of reviewing the action of a district court in denying a motion to remand a cause to the state court from which it had been removed. *Ex parte Hoard, supra; Ex parte Harding,*

---

[4] By the Act of May 9, 1942, Pub. L. No. 543, 77th Cong., 2d Sess., the Government is given a right of appeal from a decision or judgment sustaining a plea in abatement to an indictment or information or any count thereof.

*supra; Ex parte Roe, supra; Ex parte Park Square Automobile Station, supra.*[5] And for the same reason it has held in other cases that the writ will not issue to review an order overruling a plea to the jurisdiction, *In re Atlantic City R. Co., supra; Ex parte Chicago, R. I. & P. Ry. Co.*, 255 U. S. 273, 280; cf. *In re New York & Porto Rico S. S. Co.*, 155 U. S. 523, 531, or denying a nonsuit, *Ex parte Loring*, 94 U. S. 418, despite the inconvenience to petitioner of being forced to proceed to trial in advance of a review of the court's action. *Ex parte Whitney*, 13 Pet. 404, 408; *Ex parte Perry*, 102 U. S. 183, 186. Here the inconvenience to the litigants results alone from the circumstance that Congress has provided for review of the district court's order only on review of the final judgment, and not from an abuse of judicial power, or refusal to exercise it, which it is the function of mandamus to correct. Hence there are in this case no special circumstances which would justify the issuance of the writ, such as the persistent disregard of the Rules of Civil Procedure prescribed by this Court, found in *McCullough* v. *Cosgrave*, 309 U. S. 634 (see *Los Angeles Brush Co.* v. *James*, 272 U. S. 701, 706–8); or the refusal to perform a plain ministerial duty, involved in *Ex parte United States, supra;* or the considerations of comity between state and federal courts, thought to be controlling in *Maryland* v. *Soper (No. 1)*, 270 U. S. 9, 29.

---

[5] Mandamus has frequently been used to compel the remand to a state court of a criminal case improperly removed under §§ 31–33 of the Judicial Code, 28 U. S. C. §§ 74–6. *Maryland* v. *Soper (No. 1)*, 270 U. S. 9, and cases cited; *Colorado* v. *Symes*, 286 U. S. 510. But removal of such cases involves an extraordinary interference with a state's administration of criminal justice such as to justify an exceptional use of the writ. Moreover, in those cases there was no provision for appeal by the state from an acquittal, *Maryland* v. *Soper, supra*, 30; cf. *United States* v. *Sanges*, 144 U. S. 310. And see *Kepner* v. *United States*, 195 U. S. 100, with which compare *Palko* v. *Connecticut*, 302 U. S. 319, 322–3.

The decisions of this Court on which respondents especially rely are not applicable here. In *Ex parte Simons,* 247 U. S. 231, the writ directed the district court to set aside its order transferring to the equity docket a case plainly triable at law by jury. The district court's order was regarded by this Court "as having repudiated jurisdiction" of the suit. In *Ex parte Peterson,* 253 U. S. 300, in which the writ was sought similarly to compel the district court to set aside its order referring the cause to an auditor, the application was denied because the order was held not to preclude a jury trial. And in *Ex parte Skinner & Eddy,* 265 U. S. 86, the writ prohibited the Court of Claims from exercising jurisdiction, contrary to statute, over a suit which it had previously dismissed. There its assumption of jurisdiction would have deprived the litigants of trial by jury in a state court where an action against an agency of the United States involving the same issue was pending. Thus in the two cases in which the writ was granted, it was issued in aid of the appellate jurisdiction of this Court to compel an inferior court to relinquish a jurisdiction which it could not lawfully exercise or to exercise a jurisdiction which it had unlawfully repudiated. Cf. *Ex parte Peru, supra.* In the present case the district court has acted within its jurisdiction and has rendered a decision which, even if erroneous, involved no abuse of judicial power. In issuing the writ the court of appeals below has done no more than substitute mandamus for an appeal contrary to the statutes and the policy of Congress, which has restricted that court's appellate review to final judgments of the district court.

*Reversed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.