NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

IN RE SACRAMENTO MUNICIPAL UTILITY DISTRICT,

*Petitioner.*

---

Miscellaneous Docket No. 931

---

On Petition for Writ of Mandamus to the United States Court of Federal Claims in case no. 98-CV-488, Judge Susan G. Braden.

---

## ON PETITION FOR WRIT OF MANDAMUS

---

Before NEWMAN, FRIEDMAN, and LOURIE, *Circuit Judges.*

LOURIE, *Circuit Judge.*

### ORDER

The Sacramento Municipal Utility District ("SMUD") petitions for a writ of mandamus to direct the United States Court of Federal Claims to lift the stay preventing entry of final judgment pursuant to its Memorandum Opinion in *Sacramento Mun. Util. Dist. v. United States,* No. 98-488C, 2009 WL 5197854 (Fed. Cl. 2009) ("*SMUD V*"), awarding damages for mitigation costs to SMUD. Respondent, the United States, opposes.

Petitioner, SMUD, a public nuclear utility that owned a decommissioned nuclear power plant, sued the United States for breach of a Department of Energy (DOE) standard contract for disposal of spent nuclear fuel (SNF) and high-level radioactive waste (HLW) and for taking without just compensation. After a complicated series of adjudications, discussed briefly below, the trial court awarded SMUD mitigation damages totaling $53,159,863, for a period of time up to and including December 31, 2003. *Id.* at *9 and n.5. However, the trial court then stayed the execution of that judgment, pending resolution of a separately pending case filed by SMUD seeking damages for breach of the standard contract from January 2004 onward. *Id.* at *10.

Under the Nuclear Waste Policy Act (NWPA) of 1982, 42 U.S.C. § 10101, et seq., the federal government assumed the legal duty to "provide for the permanent disposal" of SNF and/or HLW from utilities across the country by providing for the long-term storage of such material. *See Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495, 496 (Fed. Cl. 2005) ("*SMUD I*") (citing 42 U.S.C. § 10131(a)(4) and (b)(2)). The NWPA required DOE to enter into standard contracts with the generators and owners of SNF and HLW by June 30, 1983, that required DOE to accept, transport and dispose of such materials. *Id.* The standard contract required DOE to commence disposal of SNF no later than January 31, 1998. *Id.* at 497 (*citing* 41 U.S.C. § 10222(5)(B)). In exchange, the contract obligated the generators and owners to pay removal and disposal fees into the Nuclear Waste Fund. *Id.*

SMUD and DOE entered into the DOE Standard Contract on June 14, 1983. *Id.* at 498. On June 7, 1989, SMUD permanently shut down its Rancho Seco nuclear plant and assumed the costs of storing the SNF, first in a wet pool facility, and later in a less expensive dry storage

facility that it began to construct in 1991. *Id.* For the relevant time period involved here, the government has not accepted any SNF for storage from SMUD, due to the lack of an appropriate federal repository. *Id.* Thus, SMUD brought a breach of contract and takings action in the Court of Federal Claims and was awarded mitigation damages for certain costs incurred from May 15, 1997 to December 31, 2003. *Sacramento Mun. Util. Dist. v. United States*, 70 Fed. Cl. 332, 367-78 (Fed. Cl. 2006) ("*SMUD II*"). In a subsequent proceeding, the amount of damages was determined to be $39,796,234. *Sacramento Mun. Util. Dist. v. United States*, 74 Fed. Cl. 727, 735 (Fed. Cl. 2006) ("*SMUDIII*"). An appeal was taken to this court, which reversed-in-part and remanded *SMUD II* and *III* for re-calculation of the damages amount in light of certain factors and disallowance of certain government offsets. *Sacramento Mun. Util. Dist. v. United States*, 293 Fed. Appx. 766, 768 (Fed. Cir. 2008) ("*SMUD IV*"). On remand, the Court of Federal Claims held an evidentiary hearing and recalculated the amount of damages, taking into account the factors set forth on remand and restoring certain offsets, arriving at an amount of $53,159,863.[1] *SMUD V*, at *9. The government did not contest that SMUD established the damages with reasonable certainty; however, it argued that the trial court should also determine the amount saved by SMUD by closing the wet pool storage facilities and moving the SNF to the less expensive dry storage facilities from 2004 to 2008, and

---

[1] This amount of damages is the total of the trial court's previous damage award of $39,796,234 in *SMUD III*, combined with the restoration of $13,363,629 in offsets that were ordered in *SMUD IV*. *See SMUD V*, at *9.

that SMUD's damages award should be offset by this amount.[2] *Id.* at *9.

Meanwhile, SMUD filed a separate action for damages in an unspecified amount from January 1, 2004 forward, *Sacramento Mun. Util. Dist. v. United States*, Case No. 09-587C (Dec. 4, 2009). *SMUD V*, at *10. The Court of Federal Claims declined the government's request to offset SMUD's damages by the amount of wet-pool savings in the present action for several reasons, including: (1) the government failed to raise the issue at trial, waiting until the case had been remanded; (2) the Federal Circuit remand did not direct the court to consider such savings; and (3) the parties had previously stipulated that the scope of the present proceeding was limited to damages incurred through December 31, 2003. *Id.* at *9. Thus, the trial court determined that it was proper to account for any offset due to wet-pool savings from 2004-2008 in SMUD's later proceeding covering this time period. *Id.* at *10. Nevertheless, the trial court stayed the execution of judgment at the request of the government. *Id.* The trial court reasoned that its stay was necessary "in the interests of justice," because it found that the government had a legitimate concern "that the amount of costs SMUD may seek in the next proceeding will not be sufficient to allow the Government to recoup the amount of SNF wet pool savings realized from 2004-2008." *Id.* SMUD disputes that the government's

---

[2] The Court of Federal Claims further noted that "$4,196,360 in savings SMUD realized in 2004 from decommissioning the wet pool should be offset against the costs SMUD incurred that year." *SMUD V*, at * 9 (citing *SMUD II*, 70 Fed. Cl. at 375). It is not entirely clear from the court's opinion in *SMUD V* whether this amount has already been accounted for in the $53,159,863 damages award, since the government seems to request that this amount be "prospectively" applied for "each of the years 2004-2008." *Id.*

offsets will amount to more than the amount of damages sought in the second law suit.

SMUD moved the trial court to lift the stay and allow for entry of the final judgment. The trial court denied SMUD's request, stating that it did not believe that it had authority to lift the stay at this point in the proceeding, and further suggesting that SMUD seek mandamus review. (Exhibit C, Transcript of Status Conf. of Feb. 26, 2010, at pp. 9-14).

SMUD petitions this court for mandamus to compel the trial court to lift the stay and allow for entry of the judgment. According to SMUD, the trial court's stay is indefinite and, due to the unavailability of pre-judgment interest, there is irreparable harm caused by the delay as the value of its judgment is continually decreasing with the passage of time. SMUD also argues that it has no other means of relief. The government argues that the stay is temporary and within the discretion of the trial court. Furthermore, the government argues that SMUD's second damages claim could be resolved in an efficient and expeditious manner.

Mandamus is a drastic remedy reserved for extraordinary situations. *See Allied Chemical corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). "The federal courts traditionally have used the writ only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). The burden is on the petitioner to establish that its right to issuance of the writ is clear and indisputable, *Allied*, 449 U.S. at 35, and that there is no other adequate remedy to attain the desired relief. *Mallard v. United States District Court*, 490 U.S. 296, 309 (1989).

It is undisputed that a trial court has discretion to stay proceedings in exercising its inherent authority to control the disposition of its cases. *See Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). The trial court's discretion is not without bounds, however. *See Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991). A stay that is "so extensive that it is 'immoderate or indefinite' may be an abuse of discretion." *The Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (quoting *Landis*, 299 U.S. at 257). A trial court may abuse its discretion if it issues "a stay of indefinite duration in the absence of a pressing need." *Id.* (quoting *Landis*, 299 U.S. at 255). The trial court must first identify a pressing need for the stay, and then balance those interests against interests frustrated by the action. *Id.*

Here, SMUD argues that the trial court's stay is indefinite. However, as the government notes, SMUD has some control in that it may litigate and resolve its second claim in an efficient and expeditious manner and avoid delays to the extent possible. Furthermore, this case is unlike that of *Cherokee*, where the trial court stayed the Indian tribes' action seeking damages for the government's alleged mismanagement of tribal lands pending prosecutions of an unknown number of quiet title actions against numerous third parties. *Id.* at 1415. There is only one other pending action here, and that action was initiated by SMUD. SMUD has some control over the second proceeding and there will be a finite time period for its resolution. Thus, this situation is more analogous to a stay of an action pending resolution of a related action. *See, e.g., Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) (holding that the stay of a district court patent proceeding pending reexamination of the patent in the Patent and Trademark Office was not "for such a protracted or indefinite period as to render its issuance an abuse of discretion").

Furthermore, the trial court in this case identified a "pressing need" for the stay, that the government has a legitimate concern that the amount requested by SMUD in the next action may not be sufficient "to allow the government to recoup the amount of SNF wet pool savings realized from 2004-2008." *SMUD V* at *10. The trial court was aware that the stay would impose a hardship on SMUD, and suggested that the parties stipulate that SMUD is entitled to receive a judgment minus the estimated amount of the government offset ($20,981,800). However, the parties have not entered into any such stipulation. *Id.* at *10 n.7.

In conclusion, the trial court identified a pressing need for the stay of execution of judgment and the stay is not for such a protracted period of indefinite amount of time that it constitutes an abuse of discretion. Furthermore, given the extraordinary nature of this relief, we decline to exercise our mandamus authority at this time without prejudice to the petitioners seeking another writ of mandamus should there be unreasonable delay in resolving the next action.

Accordingly,

IT IS ORDERED THAT:

The petition for a writ of mandamus is denied.

FOR THE COURT

SEP 1 6 2010
_____
Date

/s/ Jan Horbaly
_____
Jan Horbaly
Clerk

cc:  Howard N. Cayne, Esq.
     Scott R. Damelin, Esq.

s24

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

SEP 1 6 2010

JAN HORBALY
CLERK