9/15/2022 11:21:17 AM

# Compare Results

| Old File: | | New File: |
|---|---|---|
| **22A184.pdf** | versus | **22A184_new.pdf** |
| **6 pages (67 KB)** | | **6 pages (67 KB)** |
| 9/14/2022 4:38:59 PM | | 9/15/2022 11:19:38 AM |

| Total Changes | Content | | Styling and Annotations | |
|---|---|---|---|---|
| **1** | 0 | Replacements | 0 | Styling |
| | 0 | Insertions | 0 | Annotations |
| | 1 | Deletion | | |

Go to First Change (page 1)



# SUPREME COURT OF THE UNITED STATES

No. 22A184

## YESHIVA UNIVERSITY, ET AL. *v.* YU PRIDE ALLIANCE, ET AL.

ON APPLICATION FOR STAY

[September 14, 2022]

The application for stay pending appeal of a permanent injunction entered by the New York trial court, presented to JUSTICE SOTOMAYOR and by her referred to the Court, is denied without prejudice to applicants again seeking relief from this Court if, upon properly seeking expedited review and interim relief from the New York courts, applicants receive neither. The order heretofore entered by JUSTICE SOTOMAYOR is vacated.

Applicants Yeshiva University and its president seek emergency relief from a non-final order of the New York trial court requiring the University to treat an LGBTQ student group similarly to other student groups in its student club recognition process. The application is denied because it appears that applicants have at least two further avenues for expedited or interim state court relief. First, applicants may ask the New York courts to expedite consideration of the merits of their appeal. Applicants do not assert, nor does the Appellate Division docket reveal, that they have ever requested such relief. Second, applicants may file with the Appellate Division a corrected motion for permission to appeal that court's denial of a stay to the New York Court of Appeals, as the Appellate Division clerk's office directed applicants to do on August 25. Applicants may also ask the Appellate Division to expedite consideration of that motion.

If applicants seek and receive neither expedited review

nor interim relief from the New York courts, they may return to this Court.

JUSTICE ALITO, with whom JUSTICE THOMAS, JUSTICE GORSUCH, and JUSTICE BARRETT join, dissenting.

Does the First Amendment permit a State to force a Jewish school to instruct its students in accordance with an interpretation of Torah that the school, after careful study, has concluded is incorrect? The answer to that question is surely "no." The First Amendment guarantees the right to the free exercise of religion, and if that provision means anything, it prohibits a State from enforcing its own preferred interpretation of Holy Scripture. Yet that is exactly what New York has done in this case, and it is disappointing that a majority of this Court refuses to provide relief.

Yeshiva University hosts our nation's largest Jewish undergraduate institution. That "program is structured to help students embrace the Jewish faith and engage with the secular world from a foundation of Torah values." App. 191. Thus, Yeshiva expects its undergraduate students "to live in accordance with halachic norms and Torah ideals." *Id.*, at 196.

A student group, the YU Pride Alliance (the Alliance), "vehemently disagreed" with Yeshiva's interpretation of Torah with respect to sexual relations between members of the same sex, so it applied for recognition as an official student group in order to "'make a statement'" and promote "'cultural changes'" in the institution. *Id.*, at 16, 250–51. To facilitate those goals, the Alliance planned to host events that framed Jewish practices and religious events through an LGBTQ lens. "After much deliberation" and in consultation with senior rabbis, Yeshiva concluded that recognizing the Alliance would have "implications that are not consistent with Torah." *Id.*, at 191. Doing so, Yeshiva believed, would "'cloud [the] nuanced message'" of Torah, which "'accept[s] each individual with love,'" but also "'affirm[s] its

timeless prescriptions.'" *Id.*, at 107. The University therefore denied the Alliance's request for formal recognition but made it clear that students could "'socialize in gatherings [as] they see fit.'" *Id.*, at 81, 107.

Dissatisfied with this response, the Alliance sued Yeshiva in state court, claiming that its refusal to recognize the group violated a provision of the New York City Human Rights Law (NYCHRL) that forbids discrimination on the basis of sexual orientation and gender. The trial court agreed. Perfunctorily dismissing the University's First Amendment arguments, the court ordered Yeshiva to recognize the group and to "immediately" grant it "the full and equal accommodations, advantages, facilities, and privileges afforded to all other student groups." *Id.*, at 71. The court denied Yeshiva's request for a stay pending appeal, and when the University applied to the Appellate Division and the Court of Appeals for interim relief, those courts refused without providing a single word of explanation. As a last resort, Yeshiva turned to this Court, but the majority—for no good reason—sends the University back to the state courts. The upshot is that Yeshiva is almost certain to be compelled for at least some period of time (and perhaps for a lengthy spell) to instruct its students in accordance with what it regards as an incorrect interpretation of Torah and Jewish law.

An applicant may obtain a stay pending appeal if it makes a strong showing (1) that it would likely prevail if review is granted, (2) that it will suffer irreparable harm during the time it takes for the completion of the appellate process, and (3) that neither the interests of other parties nor those of the public militate in favor of denial. *Nken* v. *Holder*, 556 U. S. 418, 434 (2009). Yeshiva easily satisfies all these requirements.

At least four of us are likely to vote to grant certiorari if Yeshiva's First Amendment arguments are rejected on appeal, and Yeshiva would likely win if its case came before

us. A State's imposition of its own mandatory interpretation of scripture is a shocking development that calls out for review. The Free Exercise Clause protects the ability of religious schools to educate in accordance with their faith. See *Carson* v. *Makin*, 596 U. S. ___, ___ (2022) (slip op., at 7); *Hosanna-Tabor Evangelical Lutheran Church and School* v. *EEOC*, 565 U. S. 171 (2012). Restrictions on religious exercise that are not "neutral and of general applicability" must survive strict scrutiny, *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U. S. 520, 531, 546 (1993), and the NYCHRL treats a vast category of secular groups more favorably than religious schools like Yeshiva. The NYCHRL exempts any "corporation incorporated under the benevolent orders law or described in the benevolent orders law." NYC Admin. Code §8–102 (2022). It is therefore inapplicable to large groups like the American Legion and the Loyal Order of Moose, as well as smaller groups like the United Scottish Clans of New York and New Jersey. See N. Y. Ben. Ord. Law §2 (McKinney 2015). But Yeshiva was denied an exemption, and there has been no showing that granting an exemption to Yeshiva would undermine the policy goals of the NYCHRL to a greater extent than the exemptions afforded to hundreds of diverse secular groups. Accordingly, strict scrutiny applies. Based on the papers submitted to us in connection with this application, it is not likely that the Alliance could satisfy its burden under that standard.

Unless a stay is granted, Yeshiva will be required to recognize the Alliance as an official student group and to grant it all the privileges extended to other such groups. As the Alliance has contended, this would force Yeshiva to make a "statement" in support of an interpretation of Torah with which the University disagrees. The loss of First Amendment rights for even a short period constitutes irreparable harm, *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 592 U. S. ___, ___ (2020) (*per curiam*) (slip op., at 5), and the

appellate process in the state courts could easily drag on for many months. And as for the interests of Alliance members and the general public, while a stay would deprive the Alliance of the statement it wishes to obtain, Alliance members would not be prevented from socializing and conducting activities that do not require official recognition.

The majority does not address our well-established standard for granting a stay but instead suggests that we cannot grant a stay because the New York courts have not entered a final order. But the state courts' denial of interim relief constitutes a final order under *National Socialist Party of America* v. *Skokie*, 432 U. S. 43, 44 (1977) (*per curiam*). It is ironic that the theory that supported a stay in that case is eschewed here. Moreover, it is far from clear that our authority to issue a stay of a state court order that violates the Constitution is limited to situations in which a final order has been entered below. See, *e.g.*, *Roche* v. *Evaporated Milk Assn.*, 319 U. S. 21, 25 (1943); *General Atomic Co.* v. *Felter*, 436 U. S. 493, 497 (1978) (*per curiam*); *Volkswagenwerk A. G.* v. *Falzon*, 461 U. S. 1303, 1304 (1983) (O'Connor, J., in chambers).

The majority instructs Yeshiva to pursue two avenues of relief in state court before filing another application here. First, the University is told to seek "expedit[ed] consideration of the merits of [its] appeal." *Ante*, at 1. But even expedited review could take months, and during all that time, the University would be required to continue to make the statement about Torah that it finds objectionable. Thus, an expedited appeal in and of itself would not be sufficient to protect Yeshiva's First Amendment rights. Second—and more to the point—the majority seems to think that it is still possible for the University to persuade the Court of Appeals to grant a stay. Of course, the Court of Appeals has *already* denied Yeshiva's application for interim relief, but the majority interprets a case comment written by a court clerk employed by the Appellate Division to mean that the

Court of Appeals may give Yeshiva a second bite at the apple notwithstanding its previous denial.  That interpretation is dubious, yet the majority seizes upon it as dispositive.

I doubt that Yeshiva's return to state court will be fruitful, and I see no reason why we should not grant a stay at this time.  It is our duty to stand up for the Constitution even when doing so is controversial.

For these reasons, I respectfully dissent.