# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————

**Misc. Dkt. No. 2023-03**

———————————

**In re HVZ**
*Petitioner*

**Michael K. FEWELL**
Technical Sergeant (E-6), U.S. Air Force
*Real Party in Interest*

———————————

Review of Petition for Extraordinary Relief in the Nature of
a Writ of Mandamus

Decided 14 July 2023

———————————

*Military Judge:* Matthew P. Stoffel.

*GCM convened at:* Luke Air Force Base, Arizona.

*For Petitioner:* Major Marilyn S.P. McCall, USAF; Devon A.R. Wells,
Esquire.

*For Technical Sergeant Fewell:* Major David L. Bosner, USAF; Captain
Samantha M. Castanien, USAF; Captain Rebecca J. Saathoff, USAF.

*For the United States:* Colonel Naomi P. Dennis, USAF; Major Morgan
R. Christie, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and CADOTTE, *Appellate Military
Judges.*

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as
precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

On 16 May 2023, pursuant to Article 6b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b,[1] and Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, JT. CT. CRIM. APP. R. 19, Petitioner requested this court issue a writ of mandamus and stay of proceedings in the pending court-martial of *United States v. Technical Sergeant Michael K. Fewell* (the Accused). Petitioner requests this court "vacate the trial court's decision [dated 11 May 2023] to order disclosure of extensive medical records" of Petitioner. On 19 May 2023, this court issued an order staying the court-martial proceedings and staying further implementation of the trial court's 11 May 2023 order to the 56th Medical Group (56 MDG), pending further order by this court. This court also ordered counsel for the Government and counsel for the Accused to submit briefs in response to the petition no later than 8 June 2023. This court received the parties' timely responsive briefs opposing the petition on 8 June 2023. Petitioner submitted a reply brief on 15 June 2023.

Having considered the petition, the responsive briefs, Petitioner's reply brief, and the matters attached thereto, we deny the petition.

## I. BACKGROUND

The petition, responsive briefs, and reply brief, with their several attachments, establish the following sequence of events.

On 10 January 2023, the convening authority referred for trial two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920; two specifications of domestic violence in violation of Article 128b, UCMJ, 10 U.S.C. § 928b; and two specifications of wrongful use of controlled substances in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Petitioner is the alleged victim of the charged Article 120, UCMJ, and Article 128b, UCMJ, offenses.

On 28 April 2023, the Defense moved the trial court to "immediately secure and produce" Petitioner's "medical records and non-privileged materials within mental health records, specifically unprotected health information as described under *United States v. Mellette*[, 82 M.J. 374 (C.A.A.F. 2022)]," in the possession of the Government.

On 2 May 2023, through her Victims' Counsel, Petitioner submitted to the trial court an opposition to the defense motion, with the exception of medical records relating specifically to injuries to Petitioner's neck and back. Petitioner argued, "[o]utside of this item, Defense has not only failed to show that a

---

[1] References in this opinion to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

treatment or diagnosis exists, but that if they did, such records do not consist solely of privileged information [under Mil. R. Evid. 513]. Nor has Defense shown they would be entitled to such records under R.C.M. 703(e) . . . ." In the alternative, if the military judge granted the defense motion, Petitioner requested the military judge perform in camera review of her records and release only those he determined to be relevant and necessary to the preparation of the defense.

On 4 May 2023, the Government responded and opposed the defense motion in part. The Government did not oppose the motion with respect to non-privileged Family Advocacy records and medical records dated on and after 19 January 2020—the date of the earliest alleged offense of which Petitioner is the alleged victim—but opposed the disclosure of records from prior to 19 January 2020.

On 11 May 2023, the military judge issued an order granting the defense motion in part. The military judge's findings of fact included, *inter alia*, that Petitioner was the "primary witness against the [A]ccused" on each of the charged offenses; that Petitioner and the Accused were married at the time of the alleged offenses; and that Petitioner had told multiple individuals she had sought medical and mental health treatment due to injuries allegedly caused by the Accused, and had spoken with Family Advocacy personnel. The military judge noted the responses to the defense motion from the Government and from Petitioner, but stated he had not considered the latter due to Petitioner's "lack of standing before this trial court," citing *In re HK*, Misc. Dkt. No. 2021-07, 2021 CCA LEXIS 535 (A.F. Ct. Crim. App. 2021) (order). The military judge further explained:

> The court concludes the [D]efense is entitled to discovery of [Petitioner's] medical records and non-privileged mental health records relevant to the charged offenses that are maintained by the medical treatment facility located at Luke Air Force Base [AFB]. The court concludes the [D]efense has made a valid request for discovery of the information in accordance with R.C.M. 701(a)(2)(B). The court further concludes that any such records are within the possession, custody, or control of military authorities. *See generally In re A[L]*, [Misc. Dkt. No. 2022-12,] 2022 CCA LEXIS 702 (A.F. [Ct. Crim. App. 7 Dec.] 2022) [(order)]. . . . The court also concludes that the content of the records from the date of the first charged offenses, that is 19 January 2020 through present day is relevant to defense preparation; in fact, the parties are in agreement on this matter. . . .

The military judge similarly found the Defense was entitled to discovery of records maintained at the Family Advocacy office on Luke AFB. The military

judge found the defense motion was "not ripe" with respect to records not maintained at Luke AFB because the Defense "has not provided sufficient particularity to the [P]rosecution of where to search for such records . . . ."

Accordingly, pursuant to R.C.M. 701(g)(1), the military judge ordered trial counsel to "identify what medical records, nonprivileged mental health records, and nonprivileged Family Advocacy records of [Petitioner] are within the possession, custody, or control of military authorities, located at Luke [AFB], including those generated before, during, and after the charged timeframes." The military judge further ordered trial counsel to provide to the Defense such records as were subject to disclosure and "relevant to the [D]efense's preparation." Trial counsel were further ordered to inform the Defense and military judge of records that were privileged or not subject to disclosure and the basis for nondisclosure.

In furtherance of his ruling, on 11 May 2023 the military judge also issued a separate order to the 56 MDG located at Luke AFB to "provide any medical, mental health, or Family Advocacy records [pertaining to Petitioner] maintained by the [56 MDG] or any subordinate clinic." The military judge directed the 56 MDG to work with a medical law attorney to "ensure any and all matters subject to privilege under Military Rule of Evidence 513 are redacted prior to providing the information" to trial counsel "as soon as practicable and no later than 1700 local on 24 May 2023." The military judge further ordered that only the Prosecution and Defense (to include appointed expert consultants), as well as Petitioner and her Victims' Counsel, were to have access to the disclosed records.

As noted above, on 19 May 2023 this court stayed the proceedings of the court-martial and further implementation of the military judge's 11 May 2023 order.

## II. DISCUSSION

### A. Law

The All Writs Act, 28 U.S.C. § 1651(a), grants a Court of Criminal Appeals (CCA) "authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). In order to prevail on a petition for a writ of mandamus, the petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and

(3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004)); *see also In re KK*, ___ M.J. ___, Misc. Dkt. No. 2022-13, 2023 CCA LEXIS 31, at *10 (A.F. Ct. Crim. App. 24 Jan. 2023) (holding traditional mandamus standard of review applicable to Article 6b(e), UCMJ, petitions). A writ of mandamus "is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)).

Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), states:

> If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4), the victim may petition the [CCA] for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

Article 6b(e)(4), UCMJ, provides that this right to petition the CCA for a writ of mandamus applies with respect to protections afforded by, *inter alia*, Article 6b, UCMJ, and Mil. R. Evid. 513.

Article 6b(a)(8), UCMJ, provides that the victim of an offense under the UCMJ has, among other rights, "[t]he right to be treated with fairness and with respect for the dignity and privacy of the victim . . . ."

In general, disclosure to the defense of documents in the possession of the prosecution is governed by Rule for Courts-Martial (R.C.M.) 701, whereas production to the defense of documents not in the possession, custody, or control of military authorities is governed by R.C.M. 703. *See United States v. Bishop*, 76 M.J. 627, 634 (A.F. Ct. Crim. App. 2017); *see also United States v. Stellato*, 74 M.J. 473, 481 (C.A.A.F. 2015) (citing R.C.M. 701(a)(2)(A)). "Each party shall have adequate opportunity to prepare its case and equal opportunity to interview witnesses and inspect evidence . . . ." R.C.M. 701(e); *see also* 10 U.S.C. § 846(a) ("In a case referred for trial by court-martial, the trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe.") "After service of charges, upon request of the defense, the Government shall permit the defense to inspect any . . . papers, documents, [or] data . . . if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation." R.C.M. 701(a)(2)(A)(i).

Mil. R. Evid. 513(a) provides that, in general:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made

> between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

"Before ordering the production or admission of evidence of a patient's records or communication,[2] the military judge must conduct a hearing, which shall be closed. . . . The patient must be afforded a reasonable opportunity to attend the hearing and be heard." Mil. R. Evid. 513(e)(2). "The military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." Mil. R. Evid. 513(e)(3). In *Mellette*, the United States Court of Appeals for the Armed Forces (CAAF) held "[t]he phrase 'communication made between the patient and a psychotherapist' [in Mil. R. Evid. 513(a)] does not naturally include other evidence, such as routine medical records, that do not memorialize actual communications between the patient and the psychotherapist," and "that diagnoses and treatments contained within medical records [including mental health records] are not themselves uniformly privileged under [Mil. R. Evid.] 513." 82 M.J. at 375, 378.

## B. Analysis

The military judge's ruling and order essentially did three things: (1) required the 56 MDG, with the assistance of a medical law attorney, to identify Petitioner's medical records, mental health records, and Family Advocacy records within the possession or control of the 56 MDG or subordinate clinics, and provide the non-privileged records to trial counsel; (2) required trial counsel to notify the military judge and Defense of the existence of records that were privileged or otherwise not subject to disclosure under R.C.M. 701 (*i.e.*, relevant to the preparation of the Defense); and (3) required trial counsel to provide the discoverable records to the Defense.

Petitioner requests this court "deny [g]overnment and [d]efense counsel [Petitioner's] medical records" and order the rescission of the military judge's 11 May 2023 order to the 56 MDG. In the alternative, Petitioner requests this court order the military judge review the records in camera and "apply the proper standards before producing the records to counsel." The petition raises two primary issues for our consideration: (1) whether the military judge erred by refusing to consider Petitioner's response to the Defense's discovery motion

---

[2] For purposes of the rule, Mil. R. Evid. 513(b)(5) defines "[e]vidence of a patient's records or communications" as "testimony of a psychotherapist, or assistant to the same, or patient records that pertain to communications by a patient to a psychotherapist, or assistant to the same, for the purposes of diagnosis or treatment of the patent's mental or emotional condition."

for lack of standing; and (2) whether the military judge incorrectly analyzed the Defense's motion as a matter of discovery governed by R.C.M. 701(a)(2)(A) rather than a matter of production governed by R.C.M. 703(g)(3)(C)(ii). We consider each contention in turn.

### 1. Refusal to Consider Petitioner's Motion Response

As noted above, the military judge refused to consider Petitioner's response to the Defense's discovery motion because he found Petitioner lacked "standing" before the court-martial, citing *In re HK*. In that decision, this court explained that although the alleged victim had standing to petition this court regarding her right to proceedings free from unreasonable delay, Article 6b, UCMJ, "include[d] no provision requiring a victim be granted the opportunity to be heard *at the trial level* regarding his or her right to proceedings free from unreasonable delay." *In re HK*, order at *7, *9 (emphasis added). The military judge's comments imply he concluded, similar to this court's determination in *In re HK*, that victim rights enumerated in Article 6b(a), UCMJ, including *inter alia* the "right to be treated with fairness and with respect for the dignity and privacy of the victim," do not create an independent right for a victim to be heard by the military judge at the trial level with regard to such rights. Article 6b(e), UCMJ, provides a victim the right to petition this court for a writ of mandamus if he or she believes a ruling by the trial court violates rights protected by Article 6b, UCMJ, itself or by other provisions of law specified in Article 6b(e)(4), UCMJ. However, Article 6b, UCMJ, does not *create* the right to be heard *by the trial court* on any and all matters affecting those rights, other than during presentencing proceedings in accordance with Article 6b(a)(4)(B), UCMJ.

On the other hand, Article 6b, UCMJ, does not remove a victim's right to be heard where that right exists in other provisions of law independent of Article 6b, UCMJ. The military judge concluded that the Defense's motion implicated discovery of Petitioner's records under R.C.M. 701 rather than production of her records under R.C.M. 703. As we discuss below, Petitioner fails to demonstrate the military judge was clearly and indisputably incorrect. R.C.M. 701, like Article 6b, UCMJ, itself, does not provide Petitioner the right to be heard at the trial court.

### 2. Discovery Under R.C.M. 701 versus Production Under R.C.M. 703

Petitioner contends the military judge erred by ordering discovery of her non-privileged medical and mental health records pursuant to R.C.M. 701(a)(2)(B), rather than analyzing the Defense's motion under R.C.M. 703. By doing so, Petitioner contends, the military judge erroneously applied the less-demanding "relevance" disclosure standard of R.C.M. 701(a)(2)(A)(i) rather than the more stringent "relevant and necessary" production standard of

R.C.M. 703(e)(1). Petitioner contends the military judge's asserted error also denied her the right to notice and an opportunity to challenge the disclosure afforded to victims by R.C.M. 703(g)(3)(C)(ii) with respect to records "not under the control of the Government." We again find Petitioner has failed to demonstrate the military judge clearly and indisputably erred.

R.C.M. 701(a)(2)(A)(i) provides the Defense access to, *inter alia*, "papers, documents, [and] data," or copies thereof, "if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation . . . ." We find the military judge did not clearly and indisputably err by concluding that Petitioner's records "maintained" by the 56 MDG—a unit within the United States Air Force—were within the "possession, custody, or control" of a "military authority."

Whether any of the records are in fact relevant and to be disclosed to the Defense is effectively yet to be determined. At this stage, the military judge has required trial counsel to review the non-privileged records provided by the 56 MDG and to provide to the Defense only those trial counsel determine to be subject to disclosure under R.C.M. 701. Those records the 56 MDG identified as privileged, and those records trial counsel determined to be not subject to discovery, are to be identified to the Defense and military judge without disclosure at this point—potentially to be the subject of further proceedings.

Petitioner offers several arguments in support of her contention the military judge erred. We address the most significant of these in turn.

Petitioner contends she has a constitutional privacy interest in her medical records managed by the 56 MDG. We agree. *See, e.g.*, *Doe v. Southeastern Pa. Transp. Auth.*, 72 F.3d 1133, 1137 (3d Cir. 1995) (interpreting *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)); *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994) (citations omitted). However, Petitioner also recognizes there is a "balance [between] the Accused's constitutional right to put on a defense, and the rights of a victim to maintain the privacy of his or her medical records." We disagree with Petitioner's interpretation of how the applicable law strikes the balance between these competing interests.

Petitioner cites *Stellato* for the proposition that "evidence not in the physical possession of the prosecution team is still within its possession, custody, or control . . . when: (1) the prosecution has both knowledge of and access to the object; [and] (2) the prosecution has the legal right to obtain the evidence . . . ." 74 M.J. at 484–85. Petitioner then contends that the Health Insurance Portability and Accountability Act (HIPAA), Public Law 104-191, and its implementing regulations, notably Department of Defense Manual (DoDM) 6025.18, *Implementation of the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule in DoD Health Care Programs* (13 Mar. 2019), prohibit

trial counsel from accessing Petitioner's medical records "without a court order," citing DoDM 6025.18 ¶ 4.4.e. Therefore, Petitioner implies, her medical records were not in the possession of military authorities for purposes of R.C.M. 701(a)(2)(A). In light of the standard of review applicable to the petition, Petitioner's argument is not persuasive.

To begin with, the definition of "possession, custody, or control" by the prosecution set forth in *Stellato* is not necessarily the exclusive definition of "possession, custody, or control of military authorities." *Stellato* did not address control over medical records maintained by a military unit; rather, *Stellato* addressed whether the military judge in that case abused his discretion by finding the Army prosecutors exercised "control" over a piece of evidence held by a local sheriff's department. *Stellato*, 74 M.J. at 485. As we indicated above, medical records maintained by the 56 MDG would seem to fall within the plain meaning of "papers, documents, [and] data . . . within the possession, custody, and control of military authorities . . . ," and the military judge did not clearly and obviously err in reaching that conclusion.

Moreover, if we do apply *Stellato* and HIPAA in this situation, we do not reach Petitioner's conclusion that trial counsel access to patient records maintained by the 56 MDG necessarily requires a court order. As this court explained in *In re AL*, HIPAA, read in conjunction with its implementing regulations, with Article 46(a), UCMJ, and with R.C.M. 703(g)(2), facially permits trial counsel to obtain evidence under the control of the "Government"—in that case, records maintained by an Army military treatment facility—using an "administrative request" that meets certain criteria,[3] rather than a court order. *In re AL*, unpub. order at *15 (citations omitted). Thus, at least arguably, in the instant case trial counsel would have had knowledge, access, and a legal right to obtain Petitioner's medical records. *See Stellato*, 74 M.J. at 484–85.[4]

---

[3] DoDM 6025.18 ¶ 4.4.f.(1)(b)3 provides:

> A DoD covered entity may disclose [protected health information] . . . [i]n compliance with, and as limited by, the relevant requirements of . . . [a]n administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, if: [ ] [t]he information sought is relevant and material to a legitimate law enforcement inquiry[;] [ ] [t]he request is in writing, specific, and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought[; and] [ ] [d]e-identified information could not reasonably be used.

[4] As in *In re AL*, our conclusion that Petitioner has not met her burden to demonstrate her clear and indisputable right to mandamus relief "is not a decision as to whether,

In her reply brief, Petitioner argues:

> Categorizing [Military Health System] records as in the posses-
> sion, custody, and [sic] control of military authorities means ***any***
> ***MHS patient records are accessible by prosecution with-***
> ***out process***—to include any accused. Yet, if process is required,
> as is the case to comply with HIPAA, then [Military Health Sys-
> tem] records are not in possession, custody, or control of military
> authorities or the Government.

We recognize the implied breadth of the military judge's reasoning. However, it is possible for non-privileged but sensitive personal records to be in the possession of military authorities—and the Prosecution in particular—and yet for the subject of those records to retain a protected privacy interest in them. Government attorneys routinely handle sensitive information that is subject to legal protection from unauthorized disclosure. Moreover, it is not accurate to say that finding medical records maintained by an Air Force medical group are within the possession, custody, or control of military authorities means they are accessible "without process." As indicated above, HIPAA and its implementing regulations do set out a process. Read in conjunction with Article 46(a), UCMJ, and R.C.M. 703(g)(2), it is at least fairly arguable HIPAA and its implementing regulations provide a process for trial counsel to obtain protected health information pursuant to a "legitimate law enforcement inquiry," provided the request meets certain criteria. DoDM 6025.18 ¶ 4.4.f.(1)(b)3. As in *In re AL*, we need not and do not determine whether this interpretation is definitively correct under ordinary standards of review applicable outside of an Article 6b(e), UCMJ, writ petition; we do find Petitioner has not met her burden to demonstrate she is clearly and indisputably entitled to relief.

### 3. Additional Considerations

We pause to address certain additional points made by the military judge and Government, and to clarify the limits of our ruling on the petition.

The military judge's ruling stated Petitioner's medical and non-privileged mental health records maintained by the 56 MDG "are within the possession, custody, or control of military authorities" for purposes of R.C.M. 701(a)(2)(B). For this proposition, the military judge cited generally *In re AL*, where this court stated that records possessed by a medical treatment facility on an Army base "were 'under the control of the Government,' that is, an agency of the United States." *In re AL*, unpub. order at *16. To be clear, and as the military judge perhaps recognized, the cited language from *In re AL* provides only

---

in other forums and under ordinary standards of review, Petitioner would be entitled to relief." *In re AL*, unpub. order at *14 n.3.

indirect support for his conclusion. The cited language was not interpreting the meaning of "possession, custody, or control of military authorities" in R.C.M. 701(a)(2)(B), but whether a trial counsel could use an administrative request to obtain medical records "under the control of the Government" in accordance with R.C.M. 703(g)(2). The context is important lest *In re AL* be interpreted to stand for a proposition it does not. Moreover, it must be noted that *In re AL*, like the instant matter, was an Article 6b(e), UCMJ, mandamus petition, and its explanation of the law must be read cautiously in light of the standard of review and a petitioner's heavy burden to demonstrate a clear and indisputable right to relief.

In its answer brief, the Government notes that in the instant case, like *In re AL*, both the Government and Petitioner conceded at trial that the Defense should receive some portion of the contested records. The Government quotes *In re AL*, unpub. order at \*17, for the proposition that "[t]his situation implicates R.C.M. 701." However, there was a distinction in *In re AL* that rendered the application of R.C.M. 701 more evident there than in the instant case. In *In re AL*, trial counsel had already obtained the records at issue. Thus "[t]he military judge was presented with a situation in which, whether by proper or improper means, the Prosecution was in possession of and had reviewed the records." *In re AL*, unpub. order at \*17. The fact that the prosecutors already had the records in their possession is what implicated R.C.M. 701, more so than the concessions by the trial counsel and victim that a portion of the records at issue should be disclosed.

Finally, we note Petitioner's "Statement of the Issue" does not assert any infringement of her substantive or procedural protections under Mil. R. Evid. 513. Accordingly, we have not reviewed whether the procedure specified by the military judge's order—whereby the 56 MDG assisted by "a medical law attorney" determines what matters are privileged and to be withheld before Petitioner's records are delivered to trial counsel—appropriately safeguards Petitioner's privilege to prevent disclosure of confidential communications protected by Mil. R. Evid. 513, and our ruling is without prejudice to Petitioner's future ability to seek review pursuant to Article 6b(e)(4)(D), UCMJ.

## III. CONCLUSION

Petitioner's petition for extraordinary relief in the nature of a writ of mandamus is **DENIED**.

**It is further ordered:**

The stay of proceedings in the court-martial of *United States v. Technical Sergeant Michael K. Fewell* and stay on implementation of the trial court's

order dated 11 May 2023 to the 56th Medical Group, previously issued by this court on 19 May 2023, are hereby **LIFTED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court